UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM T.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01785-JRS-MPB |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social | ) | |
| Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff William T. protectively applied for disability insurance benefits

("DIB") and supplemental security income ("SSI") from the Social Security

Administration ("SSA") on April 13, 2015, alleging an onset date of February 1, 2014.

[ECF No. 7-2 at 11.] His applications were initially denied on June 9, 2015, [ECF No.

7-4 at 2; ECF No. 7-4 at 6], and upon reconsideration on July 13, 2015, [ECF No. 7-4

at 12; ECF No. 7-4 at 15]. Administrative Law Judge Daniel Mages (the "ALJ")

conducted a hearing on March 22, 2017. [ECF No. 7-2 at 31-57.] During the hearing,

the Plaintiff amended his alleged onset of disability to February 21, 2014. [ECF No.

7-2 at 11; *see* ECF No. 7-2 at 34.] The ALJ issued a decision on June 28, 2017,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

concluding that the Plaintiff was not entitled to receive DIB or SSI.  [ECF No. 7-2 at 8.]  The Appeals Council denied review on April 16, 2018.  [ECF No. 7-2 at 2.]  On June 12, 2018, the Plaintiff timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c).  [ECF No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v),[2] evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

The Plaintiff was 44 years of age at the time he applied for DIB and SSI. [ECF No. 7-5 at 2.] He has completed a high school education, specialized training in auto body repair, and a certification in heating, ventilation, and air conditioning ("HVAC"). [ECF No. 7-6 at 7.] He previously worked as a sales representative in retail. [ECF No. 7-6 at 7.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that the Plaintiff was not disabled. [ECF No. 7-2 at 23.] Specifically, the ALJ found as follows:

- The Plaintiff last met the insured status requirements for DIB on September 30, 2016 (the date last insured or "DLI").[4] [ECF No. 7-2 at 13.]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] The Plaintiff must prove the onset of disability on or before his DLI to be eligible for DIB. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. Recognizing that the Plaintiff

- At Step One, the Plaintiff had not engaged in substantial gainful activity[5] since February 21, 2014, the amended onset date.  [ECF No. 7-2 at 13.]

- At Step Two, he had "the following severe impairments: a partial tear in the right wrist with tendinopathy, right cubital tunnel syndrome, degenerative disc disease, asthma, obstructive sleep apnea, anemia, and obesity."  [ECF No. 7-2 at 13 (internal citations omitted).]

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [ECF No. 7-2 at 15.]

- After Step Three but before Step Four, he had the RFC "to perform a range of light work (20 CFR 404.1567(b) and 416.967(b)) defined as follows: sitting up to thirty minutes at one time and six hours during an eight-hour workday; standing and/or walking up to thirty minutes at one time and six hours during an eight-hour workday, with the use of a cane for walking; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes or scaffolds; frequent fingering, handling, and reaching with the non-dominant right upper extremity; and occasional exposure to extreme heat, extreme cold, humidity, dusts, fumes, gases, and other respiratory irritants."  [ECF No. 7-2 at 16.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering the Plaintiff's RFC, he was incapable of performing any of his past relevant work as a building maintenance worker, pawnbroker, and wirepuller.  [ECF No. 7-2 at 21.]

- At Step Five, relying on VE testimony and considering the Plaintiff's age, education, and RFC, there were jobs that existed in significant numbers in the national economy that he could have performed through the date of the decision, including representative occupations such as a table worker, final assembler, and addressing clerk.  [ECF No. 7-2 at 22-23.]

---

also had a claim for SSI, the ALJ's subsequent findings properly considered the relevant period at issue for that application beginning with the amended disability onset date, February 21, 2014, through the date of the decision.  *See, e.g.,* [ECF No. 7-2 at 23.]

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

## III.
### DISCUSSION

The Plaintiff raises three assignments of error, that the ALJ (1) did not provide a logical bridge between his RFC finding and the other work he found the Plaintiff capable of performing, (2) failed to properly consider the Plaintiff's treating source opinions, and (3) improperly used limited activities of daily living to find the Plaintiff capable of performing full-time work.

### A. RFC and Step Five Determination

The Plaintiff contends that the ALJ's RFC finding that the Plaintiff was capable of a reduced range of light work "is at odds" with (1) the ALJ's Step Five finding that the Plaintiff was capable of representative occupations at the sedentary exertional level and (2) the VE's testimony that light work is precluded by the required use of a cane to ambulate. [ECF No. 9 at 16.] Further, the Plaintiff asserts generally that the ALJ failed to provide a logical bridge from the evidence to his conclusion, which is necessary to assure that important evidence was considered and to allow the Court meaningful review. [ECF No. 9 at 17.]

The Plaintiff's argument is unavailing. There is nothing logically inconsistent about the ALJ's RFC finding and his Step Five determination. The SSA's guidance instructs the ALJ to complete a function-by-function assessment of the claimant's RFC before categorizing the claimant's capabilities according to a broad exertional level (i.e., sedentary, light, medium, heavy, or very heavy). *See* Social Security Ruling ("SSR") 96-9p (S.S.A. July 2, 1996), 1996 WL 374184, at *3. The "*RFC represents the most that an individual can do despite his or her limitations or restrictions.* At step

5 of the sequential evaluation process, RFC must not be expressed in terms of the lowest exertional level [that the claimant is capable of performing]." *Id.* at *4 (emphasis in original). The ALJ's RFC assessment most closely matched the regulatory definition of light work by finding the Plaintiff capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, with the ability to stand and walk for a total of six hours in an eight-hour workday. *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing . . . ."). However, as detailed above, the ALJ did not merely express the Plaintiff's RFC in terms of a broad exertional category. The ALJ's RFC finding laid out the specific exertional and non-exertional limitations and capabilities that the ALJ assessed based on the record. For example, the ALJ found that the Plaintiff was limited to standing and/or walking up to thirty minutes at one time, the use of a cane for walking, and sitting up to thirty minutes at one time. The additional exertional limitations detailed by the ALJ do not clearly conform with the regulatory definition of any of the broad exertional categories of work. In these situations, the SSA provides additional guidance to ALJ's making a Step Five determination:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and access its significance.
> [. . .]

Vocational experts may testify for this purpose at the hearing and appeals levels.

SSR 83-12 (S.S.A. Jan. 1, 1983), 1983 WL 31253, at *2.

The ALJ's Step Five analysis was made according to the relevant legal guidance. In *Haynes v. Barnhart*, 416 F.3d 621, 628 (7th Cir. 2005), the Seventh Circuit explained that:

> The regulations and relevant caselaw amply provide for situations in which claimants fall between exertional levels, as Haynes does here. In such cases, the ALJ must give consideration to the grids [the Medical-Vocational Guidelines] or use them as a framework. In addition, consultation with a vocational expert may be helpful or even required.

(citing SSR 83-12, 1983 WL 31253, at *2; *Books v. Chater,* 91 F.3d 972, 980-81 (7th Cir. 1996) (where the claimant could perform the full range of light work tasks subject to certain sitting and standing restrictions, it was appropriate for the ALJ to procure testimony from a vocational expert and find the claimant not disabled) (additional internal citations omitted)).

Here, the ALJ utilized the VE at the hearing by posing progressive hypotheticals which eventually included all the limitations that the ALJ would assess in his RFC finding. *See* [ECF No. 7-2 at 52-56.] The ALJ explained in the written decision that the Medical-Vocational Guidelines would direct a finding of not disabled at Step Five if the Plaintiff could perform the full range of light work, but because the Plaintiff's ability to perform the full range of light work was "impeded by additional limitations," the ALJ consulted with the VE. [ECF No. 7-2 at 22.] The VE "testified that given all of these factors, such an individual would be able to perform the requirements of representative unskilled (SVP-2) sedentary occupations (the

vocational expert could not identify any light occupations with the use of a cane for walking) . . . ." [ECF No. 7-2 at 22 (see above for representative occupations).] Despite the presence of a limitation that effectively eliminated all light work—the use of a cane for walking—it would have been improper for the ALJ to assess an RFC for sedentary work because the ALJ assessed the Plaintiff to have certain maximum capabilities that exceeded the definition of sedentary work. The rulings discussed above encourage the ALJ to be as precise as possible with his RFC assessment to foster more accurate results at Steps Four and Five. As such, the Court can trace the ALJ's logic from his RFC finding for a reduced range of light work to his Step Five determination that only sedentary occupations would be available given all the combined limitations of the Plaintiff. Thus, the Court rejects Plaintiff's first argument.

### B. Treating Opinions

The Plaintiff contends that the ALJ did not properly weigh or give deference to the opinions of her treating providers, Shiva Gangadhar, M.D., and Nurse Practitioner Payne. [ECF No. 9 at 18-20.] The Plaintiff asserts that the ALJ was not justified in discounting the opinion of Dr. Gangadhar based on the ALJ's assumption that because there was evidence the form was completed in the presence of the Plaintiff that the assessment was based on the Plaintiff's subjective complaints. [ECF No. 9 at 20.] Similarly, the Plaintiff contends that the ALJ's rationale for dismissing Ms. Payne's opinion that all exposure to pulmonary irritants needed to be

avoided was flawed because the ALJ overlooked the possibility that the Plaintiff's asthma was well controlled because the Plaintiff was able to avoid exposure in a controlled environment. [ECF No. 9 at 21.] Furthermore, the Plaintiff contends that the ALJ omitted explicit consideration of the factors used to evaluate medical opinions. [ECF No. 9 at 21-22.]

Based on the filing date of the Plaintiff's applications, the treating physician rule applies. *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating physician rule applies only to claims filed before March 27, 2017. In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott*, 647 F.3d at 740 (citing *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the

physician's opinion." *Scott,* 647 F.3d at 740 (citing *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c). However, so long as the ALJ "minimally articulates" his reasoning for discounting a treating source opinion, the Court must uphold the determination. *See Elder v. Astrue,* 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The ALJ gave "some weight" to the opinions of Dr. Gangadhar—a treating physical medicine and rehabilitation specialist—that were reflected in the physician's treatment notes. [ECF No. 7-2 at 20-21.] Consistent with the ALJ's Step Four finding that the Plaintiff was incapable of performing his past relevant work, Dr. Gangadhar's records included statements that the Plaintiff could not return to his prior HVAC work. [ECF No. 7-9 at 58.] The records also contained a later statement from Dr. Gangadhar that the Plaintiff could not "tolerate bending, lifting, kneeling, prolonged sitting or standing." [ECF No. 7-12 at 5.] The ALJ's RFC consistently limited the Plaintiff to standing and sitting for no more than thirty minutes at one time. The ALJ also limited the Plaintiff to occasional postural abilities. However, the ALJ explained that Dr. Gangadhar's opinion that the Plaintiff cannot tolerate bending, lifting, or kneeling was "not well supported." [ECF No. 7-2 at 21.]

The ALJ gave "little weight" to the opinions of Dr. Gangadhar expressed in a questionnaire, which included that the Plaintiff's pain would frequently interfere with his attention and concentration, he would be limited to sitting and standing/walking for two hours each in an eight-hour day, and he would be able to

use his right arm for grasping, turning, twisting, and fine manipulation for only ten percent of a workday.  [ECF No. 7-2 at 21 (citing ECF No. 7-12 at 12-16 (residual functional questionnaire completed on February 10, 2017)).]

The Court finds that the ALJ gave good reasons for not giving more weight to those opinions of Dr. Gangadhar that the ALJ selectively rejected.  The regulations instruct the ALJ to consider "consistency" with "the record as whole" when determining the weight that should be given a medical opinion.  20 C.F.R § 404.1527(c)(4).  The regulations also instruct the ALJ to consider the "supportability" of a medical opinion, which refers to the relevant evidence presented by the source to support the opinion, including "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3).  However, the regulations specify that the supportability factor is more relevant to weighing opinions from "nonexamining sources."  *Id.* Presumably, the relative distinction is appropriate because treating or examining opinions can be compared for consistency with their corresponding treating notes or examination findings.  *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (A treating source statement can be discounted if not properly explained and the treating notes do not provide any further clarification or support with objective signs). Here, the ALJ explained his reasons for discounting Dr. Gangadhar's questionnaire:

> This opinion is given little weight as it was filled out with the claimant, indicating it is based on the claimant's subjective complaints rather than objective findings.  More importantly, it is not well supported by Dr. Gangadhar, and is not consistent with the evidence of record, and is not well supported beyond the residual functional capacity detailed above.

[ECF No. 7-2 at 21.]

To a limited extent, the Court agrees with the Plaintiff that the ALJ's assumption is conjecture, that because the form was filled out in the presence of the Plaintiff that it reflected the Plaintiff's reported limitations rather than the medical assessment of Dr. Gangadhar. The Seventh Circuit discourages "stray, unsupported conjecture" that is not rooted in the record. *Hall v. Berryhill*, 906 F.3d 640, 643-44 (7th Cir. 2018). Here, the ALJ did cite to the record for support. [ECF No. 7-2 at 20-21 (citing ECF No. 7-12 at 5 ("Filled out functional residual capacity questionnaire with patient today.")).] But, the statement in the record does not clearly establish that the Plaintiff directed Dr. Gangadhar to provide any specific assessment. Alternatively, it's conceivable that Dr. Gangadhar meant to indicate only that he used the time set aside for the appointment with the Plaintiff to complete the questionnaire. That interpretation would not necessarily refute that Dr. Gangadhar completed the form based on his own assessment. However, the standard of review is deferential to the ALJ's reasonable interpretation of the facts.

More important, the Court does not read in isolation the ALJ's perhaps thin reasoning provided in the quoted portion of the decision above. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be needless formality to have the ALJ repeat substantially similar factual analyses" throughout the decision). The lack of objective signs in the relevant treatment records supports the ALJ's conclusions that the opinion was based on the Plaintiff's subjective complaints and was not consistent with the record. The Seventh Circuit has held that "subjective complaints are the opposite of objective

medical evidence and, while relevant, do not compel the ALJ to accept [a treating provider's] assessment." *Schaaf,* 602 F.3d at 875 (citing *Rice,* 384 F.3d at 370-71).

Dr. Gangadhar's opinion that the Plaintiff would be limited with the right arm to gross and fine manipulation for only ten percent of the workday was not well supported by objective medical evidence. Dr. Gangadhar explained the limitation by noting that the Plaintiff had "difficulty gripping with [his] right hand." [ECF No. 7-12 at 15.] The ALJ summarized the treatment records relevant to the Plaintiff's right wrist impairment. [ECF No. 7-2 at 17-18.] Beginning in October 2014, the Plaintiff presented to the emergency room with complaints of right wrist pain over the previous eight months, but "[o]n examination, he had no reproducible musculoskeletal pain, normal range of motion of his wrist and fingers, no abnormal neurological findings, and normal strength in his extremities." [ECF No. 7-2 at 17 (citing ECF No. 7-7 at 18-20 (x-rays of the right radius, ulna, and wrist were normal and the Plaintiff was advised to follow-up with a hand specialist)).] The Plaintiff returned to the emergency room in February 2015 and a knot on his forearm was observed, but the examination was again normal from a functional perspective and he had not made any effort to see a specialist in the interim. [ECF No. 7-7 at 23.] On April 10, 2015, an MRI showed a partial tear of the fibrocartilage in the right wrist and mild tendinopathy, but "[n]o significant tenosynovitis or tearing [was] identified." [ECF No. 7-8 at 11.] Furthermore, the ALJ explained concerning the Plaintiff's "right arm pain, his examinations were mostly normal other than a mildly positive Tinel sign, and he underwent a cubital tunnel release in early 2016 with no further

complaints." [ECF No. 7-2 at 20.] Indeed, the ALJ noted that no evidence was submitted regarding the procedure or any follow-up. [ECF No. 7-2 at 19.] On February 10, 2016, Dr. Gangadhar's treatment notes indicated that the Plaintiff "had right cubital tunnel release, doing well after that." [ECF No. 7-9 at 53.] There is little to no indication that the Plaintiff sought any treatment or had any complaints related to his right wrist that would warrant such a significant limitation with the use of his right hand, much less objective evidence supporting those complaints and limitations. For example, on February 1, 2017, the Plaintiff described his present illness as having "difficulty lifting due to back pain and arm weakness." [ECF No. 7-12 at 6.] Yet, the examination found "no weakness." [ECF No. 7-12 at 7.]

Dr. Gangadhar's medical source statements in early 2017 continued to include significant right-hand use and lifting limitations that were not well supported with objective findings, and that also conflicted with evidence of improvement with surgical intervention. Thus, the Court does not find that the ALJ was unjustified in approaching the other more severe limitations opined by Dr. Gangadhar with considerable skepticism based on the possibility they were also grounded almost solely in the Plaintiff's subjective complaints.

Also, Dr. Gangadhar's treatment notes included numerous statements that the Plaintiff's pain, mobility, and ability to perform activities of daily living were improved with the use of medication, which tend to show the opined limitations were not consistent with the longitudinal subjective complaints either. *See* [ECF No. 7-9 at 59; ECF No. 7-9 at 62-64]. "Pain medication is helping significantly, allowing for

tolerance of home exercises and mobility." [ECF No. 7-12 at 10.] "He is able to move about the office without problems." [ECF No. 7-11 at 16.] Accordingly, the Court does not find that remand is necessary for further consideration of Dr. Gangadhar's opinions.

As to the partially completed questionnaire provided by Nurse Practitioner Payne, [ECF No. 7-12 at 17], the ALJ also gave the opinion "little weight as it is not well supported by the medical evidence." [ECF No. 7-2 at 21.]

Ms. Payne does not qualify under the regulations as an "acceptable medical source." 20 C.F.R. § 404.1502. The SSA distinguishes statements based on whether they were offered by an acceptable medical source. *See* SSR 06-03p (S.S.A. Aug. 9, 2006), 2006 WL 2329939, at *2. For example, with claims filed before March 27, 2017, only acceptable medical sources can provide "medical opinions" deserving of "controlling weight" or establish medically determinable impairments. *See* 20 C.F.R. § 404.1527(a)–(c); *see also* SSR 06-03p. However, statements from sources that do not qualify as acceptable medical sources can still be significant to the evaluation of the claim. SSR 06-03p discusses statements from medical sources, for example a "nurse practitioner," observing that "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2. "Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional

effects, along with the other relevant evidence in the file." *Id.* at *3. "Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'" *Id.* at *4.

The Court finds that the ALJ gave good reasons for giving limited weight to Ms. Payne's opinion. The ALJ explained why he had rejected certain limitations, including the Plaintiff would likely miss more than four days of work per month because of anxiety:

> For example, the claimant had only two months of treatment for anxiety, and it improved with medication and therapy. Further, his asthma seems to be fairly well controlled, lending no support to the opinion that he should avoid all exposure to pulmonary irritants.

[ECF No. 7-2 at 21.] The ALJ adequately explained the limited treatment sought and evidence of control of the Plaintiff's anxiety when he explained his Step Two finding that the Plaintiff did not have a severe mental impairment. [ECF No. 7-2 at 14.] The ALJ also summarized the limited evidence related to the Plaintiff's asthma and a cough that was resolved after discontinuing Lisinopril. [ECF No. 7-2 at 19.] The Plaintiff does not present evidence showing any significant, ongoing issues with either impairment, nor does he present evidence demonstrating that his asthma was only controlled because he had taken measures to avoid all exposure to irritants. Thus, the Court does not find that remand is warranted for further consideration of Ms. Payne's opinion.

## C. Subjective Symptom Evaluation

The Plaintiff asserts that the ALJ erroneously determined him to be capable of full-time work based on minimal activities of daily living. [ECF No. 9 at 23.]

As noted above, the Seventh Circuit requires the Court to accord the ALJ's credibility determination considerable deference, overturning it only if is it patently wrong. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Prochaska,* 454 F.3d at 738 ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported can the finding be reversed."). However, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Clifford,* 227 F.3d at 872.

On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility." *Id.* The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on

the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The standard used to review an ALJ's subjective symptom evaluation remains whether the assessment was patently wrong.

The Plaintiff does not engage the relevant standard of review or fully develop an argument that the ALJ's subjective symptom evaluation was patently wrong. An ALJ may appropriately consider a claimant's daily activities, including household chores. *Craft*, 539 F.3d at 680 (citing 20 C.F.R. § 404.1529). But, the Seventh Circuit has proscribed placing undue weight on daily activities that "ignored [the claimant's] qualifications as to *how* he carried out those activities." *Craft*, 539 F.3d at 680 (emphasis in original). The ALJ acknowledged that the Plaintiff had "described fairly limited activities." [ECF No. 7-2 at 20.] "However, at certain points in the record, he admits to more abilities than he alleges." [ECF No. 7-2 at 20.] As discussed above, the ALJ cited evidence, though somewhat vague, that the Plaintiff was more capable of performing his activities of daily living with the use of pain medication. The Court does not read the decision as suggesting the activities themselves demonstrated the ability to perform full-time work, but rather were an example of inconsistent information provided by the Plaintiff bearing on his credibility generally.

Regardless, the Plaintiff does not address the many other justifications that the ALJ gave for finding the Plaintiff's statements concerning his subjective symptoms not entirely consistent with the record. Under the deferential standard relevant here, an ALJ's subjective symptom evaluation need not be perfect. In *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011), the Seventh Circuit explained

"[a]lthough we find some deficiencies in the ALJ's discussion of McKinzey's credibility, we conclude that the ALJ has pointed to sufficient evidence in the record to justify [his] negative determination. [. . .] The ALJ's credibility determination was not without fault. Indeed, we see some merit in two out of three of McKinzey's attacks." *Id.* The Seventh Circuit upheld the ALJ's credibility determination because the ALJ had accurately provided other reasons. *Id.* at 891. Here, as noted above when discussing the opinion evidence, the ALJ cited substantial evidence that pain and mobility was improved with medication. The ALJ summarized the objective evidence, which did not substantiate the Plaintiff's subjective complaints. The ALJ also cited evidence detailed above that the Plaintiff had not always reported significant symptoms to his providers or regularly sought treatment consistent with the severity of his alleged symptoms. Inconsistencies with the severity of symptoms reported at the hearing and those reported while seeking treatment or the failure to regularly seek treatment for those symptoms can support an ALJ's credibility finding. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005). Moreover, the ALJ explicitly considered the relevant factors specified in SSR 16-3 to guide an ALJ's subjective symptom evaluation. [ECF No. 7-2 at 20]; *see* SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *7-8. Accordingly, the Court does not conclude that the ALJ's subjective symptom evaluation was patently wrong despite Plaintiff's limited argument to the contrary.

## IV.
### Conclusion

"The standard for disability claims under the Social Security Act is stringent."

*Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by the Plaintiff to reverse the ALJ's decision that he was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.

Date: 7/9/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Catherine L. Gibbons
SOCIAL SECURITY ADMINISTRATION
catherine.gibbons@ssa.gov

Charles D. Hankey
charleshankey@hankeylawoffice.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov